STUBBS v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1901.)

No. 1,328.

1. PUBLIC LANDS—PROSECUTION FOR CUTTING TIMBER—INFORMATION.

An information charging the unlawful cutting of timber on public lands, although drawn to conform to the requirements of Rev. St. § 2461, and intended to charge an offense thereunder, may be treated as drawn under section 4 of Act June 3, 1878 (20 Stat. 90), where it contains all the averments necessary to charge an offense thereunder.

2. SAME—TRIAL—DEFENSES.

In a prosecution under Act June 3, 1878 (20 Stat. 90, c. 151), for the unlawful cutting of timber on public lands, the burden rests on the defendant to establish the defense that such cutting was lawful under the act of the same date (20 Stat. 88, c. 150), which authorizes the cutting of timber from mineral lands for certain purposes and under prescribed regulations, and where he introduces no evidence showing a compliance with such regulations in material respects, or that the timber was in fact cut for the prescribed purposes, it is not error for the court to charge the jury that it was immaterial whether the land was mineral or nonmineral.

On Rehearing.

For former opinion, see 104 Fed. 988.

Before SANBORN and THAYER, Circuit Judges, and ADAMS, District Judge.

THAYER, Circuit Judge. This case, which is a criminal prosecution for cutting timber on government lands, was argued and submitted at the May term, 1900, and an opinion by Judge Caldwell, who took part in the first hearing, was filed at that term, the judgment being reversed and the cause remanded for a new trial. Stubbs v. U. S., 44 C. C. A. 292, 104 Fed. 988. The judgment below was reversed at that time solely because counsel representing the government failed to call the attention of this court to an act

of congress approved August 4, 1892. 27 Stat. 348, c. 375. The case was decided in ignorance of the provisions of that act. As the information was drawn under section 2461 of the Revised Statutes, while the sentence was imposed and the trial was apparently conducted on the assumption that the prosecution was under section 4 of the act of June 3, 1878 (20 Stat. 90, c. 151), which act did not in terms apply to the state of Colorado, where the offense was committed, and as other laws were in force in the state of Colorado which rendered it lawful, under certain conditions, to cut and remove timber from mineral lands there situated, it was deemed necessary by the majority of the court to reverse the judgment, and such an order was accordingly entered. 44 C. C. A. 292, 104 Fed. 988, 992. Afterwards counsel for the government corrected certain erroneous references that had been made in their first brief, and by so doing called our attention to the second section of the act of August 4, 1892, supra, by virtue of which the fourth section of the act of June 3, 1878, had been extended to and put in force in all the "public land states," embracing, of course, the state of Colorado. Thereupon the original order of reversal was set aside, and the cause was restored to the docket for reargument. It was reargued at the present May term.

The principal question arising upon the reargument is whether the information, though professedly drawn under section 2461 of the Revised Statutes, contains the requisite averments to charge an offense under section 4 of the act of June 3, 1878, which was in force in the state of Colorado when the acts complained of were committed. Under the latter act it is made an offense "to cut, or cause or procure to be cut, * * * any timber growing on any lands of the United States * * * or remove, or cause to be removed, any timber from said public lands with intent to export or dispose of the same." Now, the information on which the conviction was had charges that the defendant and E. L. Walker and Lewis C. Jackway "unlawfully did cut and cause and procure to be unlawfully cut upon certain nonmineral public lands of the said United States, * * * being the southwest quarter of the northwest quarter and the northwest quarter of the southwest quarter of section twenty-two (22), and the southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of section twenty-one (21), in township thirty-seven (37) north, range thirteen (13) west of the New Mexico principal meridian, and other portions of the public lands of the United States * * * a large amount of timber, consisting of white pine, yellow pine, and black pine, and other timber, * * * to wit, five hundred thousand (500,000) feet, board measure, which said timber was then and there standing and growing upon the said public lands, and was then and there the property of the said United States of America, * * * and of the value of five thousand dollars ($5,000), they, * * * so cutting and causing and procuring to be cut the said timber, with intent then and there unlawfully to export, dispose of, use, and employ the same for purposes other than for use in the navy of the United States." We think it manifest from a comparison of the allegations

of the information with the statute that the former contains all of the averments necessary to describe an offense under the act of June 3, 1878, and, that being so, it is quite immaterial that the pleader had before him section 2461 of the Revised Statutes when the information was drawn, and may have supposed that he was stating an offense under that section, rather than under section 4 of the act of June 3, 1878.

The charge of the trial court was excepted to at the trial for the reason that the jury was told, in substance, that it was not important whether the land on which the timber was cut was mineral or nonmineral, and that "if the defendant is guilty in one case he is guilty in the other." This court has recently held in the case of U. S. v. Price Trading Co. (C. C. A.) 109 Fed. 239, 246, 247, 248, that the privilege conferred by the act of June 3, 1878 (20 Stat. 88, c. 150), upon citizens of the United States residing in Colorado, Nevada, and certain territories therein named, to cut and remove timber for building, agricultural, mining, and other domestic purposes, provided the timber is growing on mineral lands or on lands not subject to entry except for mineral entries, was not repealed by section 4 of an act passed on the same day (20 Stat. 90, c. 151), nor by the act of August 4, 1892 (27 Stat. 348, c. 375); but that, notwithstanding the two later acts last mentioned, the privilege exists, and may be exercised on certain conditions prescribed by the secretary of the interior. Conceding such to be the law, we do not perceive that the instruction of the trial court in the present instance was prejudicial to the defendant, or that he is entitled to complain of the same. The proof which was introduced by the government showed that the timber in question was cut on land that had been entered as a homestead and prima facie was not mineral in its character. It further showed that the land in controversy was covered with timber, and that a homestead entry had been, made on it, at the instance of the defendant, by one of his employés, and that the filing fee had been paid by the defendant, and that the purpose of filing on the land was to remove the timber to a sawmill some two miles distant, of which the defendant was one of the proprietors. The evidence which was adduced by the defendant with a view of showing that the land was chiefly valuable for minerals was speculative and highly vague and inconclusive. No veins of ore had ever been opened on the land; no minerals had ever been taken therefrom; and the most that any one could say was that a blanket vein that had been discovered several miles distant from the land probably extended in its direction and underlaid it. Moreover, the defendant did not claim that he had kept any books and had entered therein a description of the kind and amount of timber cut and a description of the land from whence it was taken, as the regulations of the interior department required him to do if it was in fact taken from land which the defendant in good faith believed to be of a mineral character. It is plain, therefore, that the defendant did not take the timber in the exercise of the privilege conferred by the act of June 3, 1878, supra, that he made no pretense of so doing, and that he did not regard the land as being chiefly valuable for minerals. The instruc-

tion in question, therefore, was not prejudicial to the defendant, nor would the evidence have justified the lower court in permitting a jury to determine whether the land was of a mineral character.

It being conceded that the fourth section of the act of June 3, 1878, was applicable to Colorado when the alleged offense was committed, we have no doubt that the conviction was right and that the judgment ought to be affirmed. It is so ordered.

SANBORN, Circuit Judge (concurring). I concur in the view that the information was sufficient, for the reasons stated in the foregoing opinion, and in the view that there was no error in the' charge of the court below that it was not important under the evidence in this case whether the lands were mineral or nonmineral, for the reasons stated in my former opinion in this case published in 104 Fed., at page 992, and in 44 C. C. A., at page 295.